## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| ZIPIT WIRELESS INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BLACKBERRY LIMITED f/k/a RESEARCH ) <br> IN MOTION LIMITED and BLACKBERRY ) <br> CORPORATION f/k/a RESEARCH IN ) <br> MOTION CORPORATION, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 6:13-cv-2959-JMC <br><br> **E-DISCOVERY ORDER** <br><br> **JURY TRIAL DEMANDED** |

**ORDER REGARDING E-DISCOVERY AND PRODUCTION
OF ELECTRONICALLY STORED INFORMATION**

The parties have discussed the preservation and production of electronically stored information ("ESI"). In order to streamline the production of ESI, to promote a just, speedy inexpensive determination of this matter, and after receiving the input of the parties to this action, it is **ORDERED AS FOLLOWS**:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1. This Order may be modified for good cause.

2. Production of ESI in accordance with this Order excludes data that is not reasonably accessible because of undue burden or cost (e.g., backup tapes intended for disaster-recovery purposes; legacy data leftover from obsolete systems that cannot be retrieved on the successor systems; deleted data remaining in fragmented form that requires some type of forensic inspection to restore and retrieve it).

1

3. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, the parties must propound specific email production requests.

4. Email production requests, if any, shall only be propounded for specific issues, rather than general discovery of a product or business.

5. Email production requests, if any, shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

6. Email production requests, if any, shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

7. Each requesting party shall limit its email production requests, if any, to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

8. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are

inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

9. The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

10. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.  Inadvertent production of privileged information will be further addressed in the Confidentiality Order.

11. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

12. Notwithstanding any other provisions herein, metadata (as used herein to refer to electronically stored information about a document that does not appear on the face of the original document if emailed or printed), audio information, video information, or any back-up materials (i.e., materials retained primarily for back-up or disaster recovery purposes) need not be searched or produced and neither the producing party nor the receiving party need deviate from any practice it normally follows with regard to preservation of such materials (e.g., regularly schedule deletion of voicemail, archiving electronic data without associated metadata, recycling of back-up tapes conducted in the ordinary course of a party's business operation is

permitted), except upon a showing of good cause.  The following locations will not be searched under any circumstances, and as such need not be preserved:  personal digital assistants; mobile phones; voicemail systems; instant messaging logs; and automated disaster recovery backup systems and/or disaster recovery backup tapes.  In addition, the parties agree that with respect to documents that automatically "autosave," only the most recent version of such documents need be searched.

13. The producing party need not employ forensic data collection or tracking methods and technologies, but instead may make electronic copies for collection and processing purposes using widely-accepted methods or methods described in manufacturers' and/or programmers' instructions, help menus, websites, and the like (e.g., .pst's, .zip's, etc.), except when and to the extent there is good cause to believe specific, material concerns about authenticity exist with respect to specific documents and materials.  If receiving party believes that there is such good cause, then the producing party and the receiving party shall meet and confer in good faith to determine the extent to which forensic and other data associated with the specific documents and materials should be produced.

14. All production document images should be provided as single-page Tagged Image File Format ("TIFFs" or ".tiff format") files.  Those image files shall be produced with an industry standard (e.g., Concordance/Opticon) load file including related extracted text where available and OCR where extracted text is not available.  The following fields also should be produced when available in the load file:  Begin Bates; End Bates; Bates BegAttach; Bates EndAttach; From; To; CC; BCC; Email Subject; Date Sent; Date Received; FileName; Author; Date Created; Date Last Modified; and Custodian. The load file also should contain NativeFilePath for documents being produced natively and TextFilePath for document-level text files.  The parties shall meet and confer to the extent reasonably necessary to facilitate the import

and use of the produced materials with commercially available document management or litigation support software. The parties shall meet and confer to discuss documents that present imaging or formatting problems. To the extent exceptions to the foregoing are required, the parties will meet and confer to discuss alternative production requirements, concerns, or formats.

15. If, by their nature, certain documents are best viewable in their native formats (e.g., Excel or Access file), a party may choose to produce such documents in their respective native formats, on a case-by-case basis, and will accommodate requests by the requesting party to produce such documents in their respective native format so long as the request is made in good faith, and is not cumulative or overly burdensome. A producing party shall not unreasonably deny such requests, and if such a request is granted, shall undertake reasonable efforts to provide a document in native format to a receiving party within five (5) business days of receipt of a request from a receiving party. If such a request to produce a document in its native format is not granted, the parties will meet and confer within five (5) business days of the receipt of the request from the receiving party. When reasonably necessary and appropriate, the parties will meet and confer regarding the production of particular documents in other formats.

16. Each page of a produced document shall have a legible, unique numeric identifier ("Document Number") not less than six (6) digits electronically "burned" onto the page at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each document shall be created so as to identify the producing party and the Document Number (*e.g,* "BETA 000000"). In the case of a natively produced document, the native file will be named with its Document Number and the producing party will provide a slipsheet TIFF image stating (1) the file was

produced in native format, (2) the Document Number of the file, and (3) any confidentiality designation assigned to the file.

17. A producing party shall not be required to search for or produce more than one identical copy of responsive documents absent a showing of good cause that the production of such additional identical copies is necessary. If a duplicate document exists that is part of a document family, the duplicate will only be removed, pursuant to the terms of this paragraph, if the entire family is removed as a duplicate, i.e., a single document will not be removed from a family even if it is a duplicate.

18. The parties shall produce documents on CD-ROM, DVD, external hard drive, FTP, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall identify (1) the case number of the case in which it is produced, (2) the producing party's name, and (3) the production date.

19. The procedure for review and production of source code, if any, will be addressed in the Confidentiality Order.

SO ORDERED:

By: *J. Michelle Childs*             June 2, 2014
     J. Michelle Childs, U.S.D.J.          Greenville, South Carolina