## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | | |
|---|---|---|
| Zipit Wireless Inc., | ) | |
| | ) | Civil Action No. 6:13-cv-02959-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Blackberry Limited f/k/a/ Research in | ) | |
| Motion Limited & Blackberry Corporation | ) | |
| f/k/a Research in Motion Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Zipit Wireless, Inc. ("Plaintiff") filed a Motion for Partial Summary Judgment on its allegations that Defendants Blackberry Limited, formerly known as Research in Motion Limited, and Blackberry Corporation, formerly known as Research in Motion Corporation, (together, "Defendant")[1] infringed on three of its patent claims. (ECF No. 80.) For the reasons that follow, the court **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint in this court on October 30, 2013, and an amended complaint on February 6, 2014, alleging four counts of patent infringement against Defendant. (ECF Nos. 1, 28.) Count One, involves U.S. Patent No. 7,894,837 (the "'837 Patent"), entitled "Instant Messaging Terminal Adapted For Wireless Communication Access Points," which includes, as relevant here, Claim 1 as well as Claims 4 and 10, which are dependent on Claim 1. (ECF No. 28 at 3; ECF No. 28-1 at 29.) Claim 1 is as follows:

> A handheld instant messaging terminal comprising:
>
> a handheld terminal housing;

---

[1] The Defendants refer to themselves as a singular entity. (*See* ECF No. 29.)

a data entry device integrated in the terminal housing, the data entry device being configured to generate textual characters and graphical symbols in response to actuation of the data entry device;

a display mounted in the terminal housing to display textual characters and graphical symbols including the textual characters and graphical symbols generated by the data entry device;

an Internet protocol communications module located within the handheld terminal housing to generate data messages in an Internet protocol;

a wireless transceiver mounted within the handheld terminal housing and coupled to the Internet protocol communications module to generate wireless data messages that include the data messages in the Internet protocol, the wireless transceiver radiates the wireless data messages from an antenna coupled to the wireless transceiver; and

a control module located within the handheld terminal housing and coupled to the Internet protocol communications module, the control module including at least one processor that executes an application program to implement at least one instant messaging protocol for generation of instant messaging (IM) data messages that are compatible with an instant messaging service, the control module providing the IM data messages that are compatible with an instant messaging service to the Internet protocol communications module to enable the IM data messages to be communicated during at least one conversation session through the Internet protocol communications module and the wireless transceiver.

(ECF No. 28-1 at 29.) Plaintiff alleges that Defendant infringed on Claims 1, 4, and 10 of the '837 Patent by manufacturing and selling unspecified "WiFi-enabled instant messaging devices and applications." (ECF No. 28 at 3-4.)

On March 4, 2014, the court entered a scheduling order to which the parties had consented. (ECF No. 31.) The scheduling order called for Plaintiff to serve its disclosure of asserted claims and infringement contentions (the "Disclosure") on Defendant by April 18, 2014; for Defendant to file its invalidity contentions by June 4, 2014; for the parties to file a joint claim construction and prehearing statement by September 3, 2014; for claim construction discovery to be completed by October 8, 2014; for the parties to submit briefs on claim construction by November 13, 2014;

2

for the court to hold a hearing on claim construction by December 10, 2014; for fact discovery to be completed by April 8, 2015; for expert discovery to be completed by July 15, 2015; and for summary judgment motions to be submitted by August 12, 2015. (*Id.* at 2-9.)

Although the scheduling order called for Plaintiff to serve its Disclosure on Defendant by April 18, 2014, Plaintiff served the Disclosure on May 2, 2014. (ECF No. 89-2.) Although the scheduling order called for Defendant to serve its invalidity contentions on Plaintiff by June 4, 2014, Defendants served their invalidity contentions on June 18, 2014. (ECF No. 89-5.)

After receiving Plaintiff's Disclosure, Defendant served on Plaintiff its amended responses to Plaintiff's interrogatories on August 8, 2014. (ECF No. 80-8.) In its interrogatory, Plaintiff asked Defendant, "[f]or each and every claim . . . that Defendant contends it does not infringe," to "state the factual and legal bases of Defendant's non-infringement contention and identify any and all materials that support, contradict, or relate to Defendant's non-infringement contention." (*Id.* at 8.) In response, Defendant answered that "[t]his action is in its early stages. This response is based on [Defendant]'s present understanding of the asserted claims and [Plaintiff]'s [Disclosure]." (*Id.* at 10.) After the qualification, Defendant stated that its

> accused instrumentalities do not infringe the asserted patent claims because, based on [Plaintiff]'s [Disclosure], at least the following claim limitations are not found within the accused instrumentalities . . . "enable[ing] IM data messages to be communicated during at least one conversation session through the Internet protocol communications module" ('837 Patent, claim 1 and claims dependent therefrom)

(*Id.*) The parties submitted a joint claim construction statement on September 3, 2014, meeting the deadline set by the scheduling order. (ECF No. 50.)

On October 2, 2014, before any other items in the scheduling order had been completed, the court entered an order granting Defendant's motion to stay litigation in this matter, to which Plaintiff had consented. (ECF No. 55.) Defendant had filed four petitions in the Patent Trial and

Appeals Board ("PTAB") of the U.S. Patent and Trademark Office seeking *inter partes* review ("IPR") of the four patents that are the subject of the instant case in an attempt to invalidate the patent claims by showing that they were unpatentable. (ECF No. 54 at 1-2.) The court stayed all deadlines in this matter until two weeks after the PTAB issued its final decisions. (ECF No. 55; *see also* ECF No. 63 (reiterating stay).) The PTAB issued its final decisions on the four petitions for IPR on March 29, 2016. (ECF No. 75 at 2; ECF Nos. 75-1, 75-2, 75-3, 75-4.) The PTAB concluded that Defendant had failed to show that Claims 1, 4, and 10 of Patent '837 were unpatentable. (ECF No. 75-2 at 27-28.) Pursuant to the court's orders, the stay on the proceedings was lifted on April 12, 2016.

Twenty-two days after the stay was lifted, on May 4, 2016, Plaintiff filed the instant motion for partial summary judgment on it claims of infringement on Claims 1, 4, and 10 in Patent '837. (ECF No. 80.) Plaintiff argues that, because Defendant is estopped from asserting that the patent claims at issue are invalid on any ground Defendant raised or could have raised in the PTAB proceeding, summary judgment is proper on the listed patent claims if the court determines that Defendant infringed on them. (*Id.* at 2-3.) Plaintiff lists 37 of Defendant's products[2] as "Infringing Products" as accused devices. (*Id.* at 4-5.)

---

[2] The products are:

the Blackberry Z10; Z30; Q5; Q10; 9720; Curve 8320; Curve 8350i; Curve 8520; Curve 8530; Curve 8900; Curve 8980; Curve 9300; Curve 9320; Curve 9330; Curve 9350; Curve 9360; Curve 9370; Curve 9380; Bold 8900; Bold 9000; Bold 9650; Bold 9700; Bold 9780; Bold 9790; Bold Touch 9900; Torch 9800; Torch 9810; Torch 9850; Torch 9860; Porsche Design P'9981; Storm2 9520; Storm2 9550; Pearl 8120; Pearl 9100; Pearl Flip 8220; Style 9670; and 8820 . . . .

(ECF No. 80 at 4-5; ECF No. 83-2 at 4-5.)

4

Plaintiff argues that Defendant has asserted that only one limitation found in Claims 1, 4, and 10 is not present in each of these accused products. (*Id.* at 6-7.) More specifically, Plaintiff argues that Defendant has asserted that the only claim limitation found in Claim 1 is not present in any of the accused products, namely that it "enable[s] the [instant messaging ("IM")] data messages to be communicated during at least one conversation session through the Internet protocol communications module." (*Id.* at 6-7.) In support of this assertion, Plaintiff points to Defendant's response to its interrogatory. (*Id.* at 7 (citing ECF No. 80-8 at 10-11).) In Plaintiff's estimation, the summary judgment motion comes down to this one limitation. Plaintiff argues that it is entitled to summary judgment because the court must construe the limitation in its favor and then must find that there can be no genuine dispute that Defendant's accused devices contain the limitation. (*See* ECF No. 80 at 14-18.)

First, Plaintiff argues that the court must construe the relevant terms of the limitation, "conversation session" and "Internet protocol communications module," in its favor. (*Id.* at 14.) Plaintiff states that "conversation" should be given its dictionary definition[3] because Defendant's expert witness in the PTAB proceeding testified, in his deposition, that the word should be given its plain and ordinary meaning and because the parties never ascribed to the word anything other than its plain and ordinary meaning. (*Id.* at 14-15.) Similarly, Plaintiff contends the court should construe the word "sessions" by its dictionary definition[4] because neither party has sought to ascribe to it any other meaning. (*Id.* at 15.) Plaintiff also contends that "communications module"

---

[3] The dictionary definition Plaintiff asserts is "an 'exchange of sentiments, observation, or ideas' or an 'exchange similar to a conversation." (ECF No. 80 at 15 (quoting *Merriam-Webster's Collegiate Dictionary* 73 (11th ed. 2014)).)

[4] Plaintiff asserts that session means "'a period devoted to a particular activity'" (ECF no. 80 at 15 (quoting *Merriam-Webster's Collegiate Dictionary* 273)) or "a data conversation between two devices" (*id.* (quoting *Newton's Telecom Dictionary* 715 (19th ed. 2003))).

should be understood by its plain and ordinary meaning—"hardware (*e.g.*, processor) and/or software components" because Defendant agreed to that construction in the PTAB proceeding. (*Id.*)

Second, Plaintiff argues that there can be no dispute that the 37 accused devices contain the limitation as it construes it. It contends that there can be no dispute that all of the devices contain an "Internet protocol communications module," and, for support, it lists as an example the online specifications of the Blackberry Z30 smart phone, which it attaches as an exhibit. (*Id.* at 16.) It states, without citation, that the other accused devices contain similar features. (*Id.*) Plaintiff likewise contends that there is no genuine dispute that the accused devices engage in "conversation sessions." (*Id.*) In support of this contention, Plaintiff notes that Defendant's expert witness called a third-party instant messenger application a "conversation session" in his deposition testimony during the PTAB proceeding, that a user manual for the Blackberry Curve 8900 smartphone describes instant messaging as "[s]tart[ing] a [c]onversation," and that articles in technology media often refer to instant messaging as conversations. (*Id.* at 16-18.)

In its response, Defendant first contends that summary judgment is premature because it has not had sufficient opportunity to conduct discovery. (ECF No. 89 at 12-13.) In this regard, Defendant appears to argue that, by filing the instant summary judgment motion, Plaintiff is attempting to circumvent the court's scheduling order. (*Id.*) It also argues that Plaintiff failed to list the accused devices in its Disclosure with the specificity required by the scheduling order. (*Id.*) It further argues that, because claim construction has not been performed, a determination of infringement cannot yet be made. (*Id.*)

Defendant next contends that Plaintiff has wrongly assumed that Defendant may no longer assert in this court that the patent claims are invalid. On the contrary, Defendant asserts that it is

only estopped from asserting invalidity on the grounds of a prior-art theory because that is all that an IPR petitioner may assert before the PTAB. (*Id.* 14) Defendant points out that it has raised other theories of invalidity as defenses in its answer to the amended complaint, and it asserts them in its opposition to summary judgment. (*See id.* at 15-18; ECF No. 29 at 8-9.)

Defendant also contends that Plaintiff has failed to meet its *prima facie* burden of proof at the summary judgment stage. Defendant points out that, because Plaintiff bears the ultimate burden of proof at trial, it is responsible to establish the *prima facie* existence of each element of its infringement claim with respect to each of the accused devices. (ECF No. 89 at 18.) In this regard, Defendant argues that, to defeat summary judgment, a non-movant defendant is not required to put forth opposing evidence unless the movant provides sufficient evidence that, if unopposed, would entitle it to summary judgment. (*Id.* at 18.) Defendant argues that Plaintiff failed to produce any evidence that any of the accused devices contain each of the limitations set forth in Claims 1, 4, and 10. (*Id.* at 19.) Aside from the one limitation that Plaintiff's motion for summary judgment addresses, Plaintiff relied exclusively on Defendant's response to its interrogatory for evidence that the accused devices contain the limitations. Defendant claims that reliance on the response is faulty because the interrogatory (and its response) does not reference any particular accused device. (*Id.*) The fact that the interrogatory did not ask which limitations are contained in each specified device, to Defendant, means that its response, which stated only one limitation, is not evidence that all of the 37 devices contain every other limitation not mentioned in the response. (*Id.*)

Lastly, Defendant contends that, even if Plaintiff met its burden to establish a *prima facie* case of infringement, summary judgment is not appropriate because genuine issues of fact remain regarding its defense of non-infringement. (*Id.* at 20.) Repeating much of its prematurity argument,

Defendant contends that the court has yet to construe several relevant terms for the claims at issue: "instant messaging terminal," "instant messaging protocol," and "conversation session." (*Id.* at 20, 24.) Defendant notes that the parties offered different constructions for these terms and avers that evidence is on record supporting Defendant's construction which would greatly undermine Plaintiff's claim of infringement. (*See id.* at 21-25.) Defendant also asserts that Plaintiff's reliance on certain examples to support its claim that all 37 accused devices contain the limitation is faulty because the Blackberry Z30 smartphone's processor should not be conflated with an Internet protocol module, because Plaintiff's reliance on evidence that the Curve 8900 transmits "conversation sessions" cannot be used as evidence that all 37 accused devices do as well, and because Plaintiff fails to account for the fact that the "Internet protocol module" and the "control module" must be distinct in order for the accused devices to contain the limitation. (*Id.* at 25-28.)

## II. LEGAL STANDARDS AND ANALYSIS

"Summary judgment is as appropriate in a patent case as it is in any other case." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (internal quotation marks omitted). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in its pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the nonmovant's position is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 252. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

Here, the court concludes that summary judgment is inappropriate for two of the reasons offered by Defendant, namely because Plaintiff has failed to make a *prima facie* showing of infringement and because summary judgment is premature at this stage of litigation. The court declines, in this order, to address Defendant's other reasons for denying summary judgment or Plaintiff's replies to them.

**A. Plaintiff has failed to make a *prima facie* showing of infringement.**

"Determining infringement requires two steps. 'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.'" *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). Regarding the first step, "[c]laim construction is an issue of law based on underlying factual considerations." *Stryker Corp. v. Zimmer, Inc.*, No. 2013-1668, ___ F.3d ___, 2016 WL 4729504, at *2 (Fed. Cir. Sept. 12, 2016) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, ___ U.S. ___, 135 S. Ct. 831, 838 (2015)). "When construing asserted claims, claim terms are given 'their ordinary and accustomed meaning as understood by one of ordinary skill in the art.'"

*Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1364 (Fed. Cir. 2015) (quoting *Dow Chem. Co. v. Sumimoto Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001)). Reference to intrinsic evidence "'may shed useful contextual light' on the ordinary and customary meaning of a claim term," *id.* (quoting *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)), and reference to extrinsic evidence may "'shed useful light on the relevant art" as well as other issues, *id.* at 1365 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-18 (Fed. Cir. 2005) (en banc))). "'The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Id.* at 1364 (quoting *Phillips*, 415 F.3d at 1316).

Regarding step two, "once the claims are construed, infringement is assessed by comparing the accused device to the claims, and the accused device infringes if it incorporates every limitation of a claim, either literally or under the doctrine of equivalents." *Nazomi Comm'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1372 (Fed. Cir. 2005); *see also Carroll Touch*, 15 F.3d at 1576 ("A claim covers an accused device if the device embodies every limitation of the claim, either literally or by an equivalent."); *id* at 1579 ("Indeed, infringement cannot be established unless every limitation of a claim is satisfied either exactly or by an equivalent in the accused device."). "Infringement is a question of fact," *Stryker*, 2016 WL 4729504, at *2, and "[t]he burden is on the patent owner to prove infringement by a preponderance of the evidence," *Carroll Touch*, 15 F.3d at 1578. Thus, summary judgment may only be granted to a patent owner when there is no genuine issue of material fact and a reasonable jury could not help but find that every limitation recited in the properly construed claim is found in the accused device.

"When a patentee with the burden of proof seeks summary judgment of infringement, it must make a prima facie showing of infringement as to each accused device before the burden

shifts to the accused infringer to offer contrary evidence." *L & W. Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006); *see Saab Cars USA, Inc. v. United State*s, 434 F.3d 1359, 1369 (Fed. Cir. 2006) (party with the burden of proof on an issue must "provide evidence sufficient, if unopposed, to prevail as a matter of law"); *see also Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307 n. 6 (Fed. Cir. 2006) (same); *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997); 11 James Wm. Moore, *Moore's Federal Practice* § 56.13[1], at 56–135 (2006) ("[I]f the movant has the burden of persuasion on an issue, the movant must make a stronger claim to summary judgment by introducing supporting evidence that would conclusively establish movant's right to a judgment after trial should nonmovant fail to rebut the evidence."). Thus, in responding to a motion for summary judgment, "a non-movant is required to provide opposing evidence . . . only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." *Saab*, 434 F.3d 1359, 1369 (Fed. Cir. 2006); *see Zenith Elecs. Corp. v. PDI Comm'ns Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) ("If . . . the movant bears the burden and its motion fails to satisfy that burden, the non-movant is not required to come forward with opposing evidence." (internal quotation marks omitted)). Moreover, "[a patentee] cannot simply 'assume' that all of [a defendant]'s products are like the one [for which it presented evidence of a limitation's presence] and thereby shift to [the defendant] the burden to show that is not the case." *L & W*, 471 F.3d at 1318.

Here, assuming step one of the infringement claim was complete and that the court decided the necessary claim constructions in Plaintiff's favor, in order for Plaintiff to make a *prima facie* showing of infringement, Plaintiff must adduce evidence that each of the 37 accused devices embody each and every limitation listed in Claims 1, 4, and 10. *See L & W*, 471 F.3d at 1318; *Saab*, 434 F.3d at 1369 (Fed. Cir. 2006); *Exigent Tech.*, 442 F.3d at 1307 n. 6; *Massey*, 118 F.3d

at 1573. If Plaintiff fails to make this showing, Defendant is under no burden to produce evidence refuting that each of the 37 accused devices embody some or all of the limitations in Claims 1, 4, and 10. *See Zenith*, 522 F.3d at 1363; *Saab*, 434 F.3d at 1369.

With respect to all but one limitation in Claim 1,[5] Plaintiff's only evidence of infringement is Defendant's response to an interrogatory. In the interrogatory, Plaintiff asked Defendant to state its bases for its contentions of non-infringement. (*See* ECF No. 80-8 at 8.) Defendant responded first by stating that its "response is based on . . . the asserted claims in [Plaintiff]'s [Disclosure]" and that "at least" the limitations it listed in its response "are not found within the accused [devices.]" (*Id.* at 10.) Defendant's response listed only one item containing several limitations from Claim 1. The absence from the list of any other limitations, Plaintiff argues, amounts to an admission by Defendant that, except for the limitation contained in the one listed item, all of Claim 1's limitations are present in all of the 37 accused devices. (*See* ECF No. 80 at 6-7.) Defendant argues that, because Plaintiff's Disclosure failed to specifically assert that any particular accused device embodied all of the limitations at issue (*see* ECF No. 89-2 (referencing "[s]upported Blackberry smartphones" and webpages associated with example accused devices)), its interrogatory response—which expressly referenced Plaintiff's Disclosure and noted that the listed limitations were "at least" those which were not present in the accused devices—should not be taken as an admission that all unlisted limitations were present in all 37 accused devices. Rather than decide whether Defendant's response amounts to an admission that every unlisted limitation is present in all 37 accused devices, the court concludes that Plaintiff has failed to present evidence that the limitation listed in Defendant's response is present in any of the accused devices.

---

[5] The relevant limitation is: "enable[s] IM data messages to be communicated during at least one conversation session through the Internet protocol communications module."

In only two filings has Plaintiff pointed to evidence that the listed limitation is present in any of the accused devices. First, in its Disclosure, Plaintiff listed webpages describing the specifications of three accused devices. (*See* ECF No. 89-2 at 8-9). These webpages, Plaintiff explained, are evidence that "[s]upported Blackberry smartphones include a control module with at least one processor for executing an application program. One example of such a control module is a core with a processor." (*Id.* at 8.) The Disclosure also listed Blackberry webpages, and excerpts therefrom, which are not associated with any particular accused device. (*Id.* at 9-10.) These webpages, Plaintiff explained, are evidence that "[s]uch application programs include application programs to implement at least one instant messaging protocol." (*Id.* at 10.) Second, in its summary judgment motion, Plaintiff states that there could be no dispute that all of the accused devices contained "Internet protocol communications modules," and, for evidentiary support, Plaintiff points to the webpage specifications of Defendant's Z30 smartphone. (ECF No. 80 at 11.) Plaintiff also states that there could be no dispute that all of the accused devices engage in "conversation sessions" and, for support, cited a user manual for Defendant's Curve 8900 smartphone. (*Id.* at 11-12.) Plaintiff has pointed to no other evidence on file that associates any other particular accused device with the limitation at issue.

The court concludes that the evidence to which Plaintiff points in its Disclosure is irrelevant for deciding this motion. In its summary judgment motion, Plaintiff asserts not only that there is only one limitation at issue but also that only one portion of that limitation is at issue, namely whether the accused devices "enable[s] IM data messages to be communicated during at least one conversation session through the Internet protocol communications module." (*See* ECF No. 80 at 11-12.) According to Plaintiff's own Disclosure, the evidence listed therein has no bearing on

whether the accused devices embody this portion of the limitation; instead, Plaintiff specified that the evidence bears on other irrelevant portions of the limitation.

Although the evidence referenced in Plaintiff's summary judgment motion does bear on the portion of the limitation at issue, the court concludes that that evidence is not sufficient to make out a *prima facie* case of infringement. This is so because Plaintiff has presented evidence only that one accused device (the Z10) embodies a subpart of the limitation at issue (the term "Internet protocol communications modules") and that another accused device (the Curve 8900) embodies a different subpart of the limitation (the term "conversation sessions"). This is not enough. As the Federal Circuit has explained, Plaintiff cannot assume, simply because it adduces evidence that a claim limitation is present in one of the 37 accused devices, that the limitation also is present in any other of the 37 accused devices. *L & W*, 471 F.3d at 1318. A necessary corollary of the rule set forth in *L & W* is that Plaintiff cannot cherry-pick one accused device to show that it embodies a subpart of a limitation, cherry-pick another accused device to show that it embodies a different subpart of the limitation, and then splice the two devices together chimera-like in an effort to show that either of those two devices, let alone that any of the other accused devices, individually embodies the limitation at issue. Under *L & W*, choosing one or more accused devices as exemplars of other accused devices is simply not enough to make a *prima facie* showing.

Plaintiff attempts to avoid the *L & W* rule by first complaining that a requirement to provide evidence that each and every limitation is embodied in each and every accused device would be unduly burdensome, as it would necessitate filing infringement contentions and summary judgment motions hundreds of pages in length. The court commiserates with Plaintiff: papers filed in patent infringement cases tend to be exceedingly voluminous, and the ensuing hardships of thick case files weigh more heavily on small-business patentees, such as Plaintiff. However, the burdens

14

attendant to patent infringement litigation do not permit the court to ignore clear precedent, and, here, precedent requires that a plaintiff alleging infringement on a patent claim and moving for summary judgment must present evidence that each and every accused device embodies each and every claim limitation. *See Nazomi*, 403 F.3d at 1372; *Carroll Touch*, 15 F.3d at 1576, 1579.

Plaintiff also argues that it should not be deprived of summary judgment when Defendant has produced no evidence that there is any difference between the 37 accused devices. The court rejects this argument. Even assuming that Plaintiff has produced evidence that any particular accused device embodies all of the subparts of the limitation at issue—which it has not—the law is clear that Plaintiff cannot assume that the evidence regarding that particular accused device applies equally to any other accused device. *See L & W*, 471 F.3d at 1318. Moreover, Plaintiff's proposal—that this assumption should be made unless Defendant comes forward with evidence that the accused devices are so dissimilar that evidence of one device's containing a limitation should not be used as evidence of another device's containing that same limitation—is exactly what *L & W* proscribed, and it would turn the summary judgment standard in patent infringement cases on its head. *See id.* (forbidding assumption that all accused devices are alike so that the burden would shift to the defendant to prove that they are not); *see also Zenith*, 522 F.3d at 1363; *Saab*, 434 F.3d at 1369.

In sum, because Plaintiff has failed to adduce evidence that any one of the 37 accused devices embodies each and every claim limitation for Claim 1, it has failed to make a *prima facie* showing of infringement. Accordingly, Plaintiff's motion for partial summary judgment on Claim 1, and Claims 4 and 10, which depend upon Claim 1, must be denied.

**B. Summary judgment is premature.**

The court's foregoing assessment of Plaintiff's *prima facie* case is premised on the assumptions both that it is proper at this stage of litigation for the court to decide the claim constructions of Claims 1, 4, and 10 and that the court would construe the claims as contended by Plaintiff. However, the court concludes that a decision on claim construction is premature at this stage of litigation and, thus, that summary judgment also is premature.[6]

Before embarking on an assessment of the instant case, it is useful to discuss the procedures related to discovery, claim construction, and summary judgment in patent infringement cases:

> Claim construction plays a crucial role in scheduling and managing summary judgment motions. . . . As a result, summary judgment on the main issues of a patent case (infringement and validity) generally cannot be resolved without construing at least some disputed claim terms. For this reason, most courts construe at least the disputed claim terms that the parties have signaled are dispositive of infringement and/or validity issues before considering summary judgment motions. Tackling both claim construction and summary judgment at the same time can be daunting, and taking them a step at a time may be prudent in certain cases.

Peter S. Menell et al., Fed. Judicial Ctr., *Patent Case Management Judicial Guide* § 6.1.2 (3d ed. 2016). Thus, generally, courts do not decide summary judgment motions until after claim construction unless (1) the motion "turn[s] entirely or principally on claim construction," such as when the defendant moves for summary judgment on its non-infringement defense or (2) there

---

[6] As an initial matter, Plaintiff is correct to point out that neither the Federal Rules of Civil Procedure nor the court's scheduling order prohibit it from filing the instant motion. In fact, read together, the Rules and the scheduling order expressly permit the filing. (*See* ECF No. 31 at 10 (setting certain date as a "deadline" for filing summary judgment motions)); Fed. R. Civ. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at *any time* until 30 days after the close of all discovery" (emphasis added)). Nonetheless, as discussed below, although Rule 56 allows for the filing of a summary judgment motion at any time before or during discovery, courts generally refuse to grant summary judgment prior to the close of discovery when the nonmovant has not had sufficient opportunity to discover opposition evidence.

exist "genuine opportunities to resolve or narrow a case early" that "do[] not depend on claim construction or significant discovery," such as when the motion turns on whether the alleged infringement occurred in the United States. *Id.* § 6.1.2-.3.

Furthermore, unless it fits into one of the two above categories, summary judgment prior to the issuance of the court's claim-construction order tends to shortchange the proper development of the case. As the scheduling order in this case demonstrates, courts prefer to permit discovery both before and after the issuance of a claim-construction order:

> A majority of courts have found that the most opportune time to hold the *Markman*[7] hearing is midway through, or before the close of, fact discovery, and prior to expert discovery. This timing affords the parties sufficient discovery in advance of the claim-construction hearing to gain an understanding of the liability issues and accurately identify terms needing construction. It also leaves time for the parties to finish fact discovery and to focus expert discovery after the court has issued its claim-construction ruling.

*Id.* § 5.1.1; *see also Magarl, L.L.C. v. Crane Co.*, No. IP 02-0478-C-T/L, 1:03-CV-01255-JDT-TW, 2004 WL 2750252, at *15 (S.D. Ind. Sept. 29, 2004) ("A claim construction which precedes summary judgment could avoid unnecessary alternative briefing and evidentiary submissions, including expert witness testimony addressed to or based on rejected claim constructions."); *id.* ("[A] more focused summary judgment process could aid the court in the ultimate goal of properly resolving the claims before it. The interest of getting it right overrides the interest of a speedier resolution.").

Not only do courts often place the claim construction decision in the midst of the discovery period, they also provide parties flexibility in developing their contentions during the period before the claim-construction order issues. Commonly, prior to the issuance of the order, "the accused

---

[7] *Markman v. Westview Instruments*, 517 U.S. 370 (1996). In *Markman*, the Supreme Court held that claim construction was a matter for the court to decide. *Id.* at 372. Thus, a hearing in which the court considers the proper construction of a claim is dubbed a *Markman* hearing.

17

infringer presses the patentee to articulate its infringement theories while the patentee tries to force the accused infringer to explain its noninfringement and invalidity theories." Menell et al., *supra*, § 4.6.3. "[B]ecause the claim-construction process lies ahead, the patentee will be reluctant to commit to a position . . . . , [and t]he defendant is in a comparable situation at the outset of the case since it needs to know what the claims mean before it can have a clear view of why it does not infringe." *Id.* To address this impasse, "[f]requently district courts . . . set[] a schedule for preliminary contentions, followed by a more committed position following issuance of the claim-construction order." *Id.*; *see id.* § 5.1.2.1.1 ("Early infringement contentions can . . . lead to unnecessary discovery disputes because they can occur before parties fully understand their positions."). The need to accord parties flexibility in their contentions until after claim construction should also result in some elasticity with respect to answers to interrogatories. "The case-focusing benefit of interrogatories can often be swamped by premature use of contention interrogatories that waste the parties' efforts before meaningful responses can be developed based on completion of fact and expert discovery."[8] *Id.* § 4.2.4.

---

[8] Because the case so well emphasizes the point, the court quotes at length from *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985):

> . . . [T]here is substantial reason to believe that the *early* knee jerk filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse. Such comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel. . . .

> This follows in part from the court's skepticism about the *quality* of the information that *early* responses to contention interrogatories are likely to contain. Counsel drafting responses to these kinds of interrogatories early in the pretrial period may fear being boxed into a position that later embarrasses them, or that might be used to try to limit the subject areas of their subsequent discovery. Lawyers generally attempt to maximize and preserve their options

18

Here, the court concludes that summary judgment should not precede claim construction. Plaintiff's partial summary judgment motion does not turn entirely or principally on claim construction because, even assuming a claim construction in Plaintiff's favor, there remains significant argument and evidentiary dispute about whether the claims, so construed, are embodied in the 37 accused devices. *See* Part A, *supra*. Moreover, Plaintiff's motion does not present a situation in which the case may be disposed or significantly narrowed without construing claims or conducting discovery. Thus, this case falls within the general principle that claim construction should precede summary judgment. Moreover, the court concludes that summary judgment at this stage of litigation would tend toward the procedural mishaps described in the authorities cited

---

> while providing as little tactical help to their opponents as possible; so motivated, they are likely to search for ways to give opponents as little information as they can get away with when they respond to contention interrogatories early in the pretrial period. The "substance" of their responses to such questions might reduce to phrases like "research and investigation continuing."
>
> In assessing the *likelihood* that *early* answers to contention interrogatories will contribute materially to the efficiency of case development one also must consider the spirit in which courts respond *early* in the pretrial period to the kinds of motions that defendants . . . argue might be used to reduce the scope of the suit. Early in the case development process courts generally are reluctant to rule definitively in response to motions under Rule[] . . . 56. Parties resisting such motions . . . can argue that pressing *early* in the pretrial period for answers to the kind of contention interrogatories that call for application of law to fact is inconsistent with the basic structure of the system for case development established by the Federal Rules of Civil Procedure. . . . [T]hat system contemplates . . . [that a]fter . . . pleadings are filed, counsel are to use discovery tools to develop the *evidentiary* bases for the claims. Discovery initially is expected to focus on developing *evidence. After* learning what the evidence is, so the theory goes, parties will be in a position to press for stipulations, admissions, or rulings on legal issues that either dispose of the case or give it the final, focused shape it will take into trial. Thus, . . . early discovery should focus on generating real world data and not on examining the parties' contentions about the legal implications of that data.

108 F.R.D. at 337-38.

above, which are best avoided by continuing on the course contemplated by the scheduling order. Proceeding to claim construction prior to summary judgment affords the parties the pre- and post-*Markman* discovery necessary to crystallize their claim construction, infringement, non-infringement, invalidity, and other contentions. As it stands, the court's stay order was issued after the parties filed their joint claim construction and prehearing statement following their exchange of preliminary claim construction contentions. Because no deadlines have been reset, the discovery period for claim construction has not expired; the parties have not filed claim construction briefs; the court has held no *Markman* hearing; and neither the fact nor the expert discovery period has closed. Accordingly, summary judgment is premature.

One final hiccup remains: whether Defendant has properly raised its objection that summary judgment is premature. Generally speaking, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Anderson*, 477 U.S. at 250 n. 5. At the same time, the party opposing summary judgment "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Fed. R. Civ. P. 56(d)[9] affidavit stating "that it could not properly oppose a motion for summary judgment without a chance to conduct discovery." *Id.*

In this case, although Defendant has advised the court that it needs more discovery, it did not file a Rule 56(d) affidavit. Thus, the court must reconcile the "general rule [that] summary judgment is appropriate only after 'adequate time for discovery,'" *id.* (quoting *Celotex*, 477 U.S.

---

[9] Rule 56(d) was formerly found at subsection (f) of the same Rule.

at 322), with Rule 56(d), which requires a party opposing summary judgment on the grounds that more discovery is needed to file an affidavit making that point. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). The Fourth Circuit has warned litigants that it "'place[s] great weight on the Rule 56([d]) affidavit and that 'a reference to Rule 56([d]) and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56([d]) affidavit.'" *Id.* (internal quotation marks and brackets omitted) (quoting *Evans*, 80 F.3d at 961). "Indeed, 'the failure to file an affidavit under Rule 56([d]) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Id.* (internal quotation marks omitted) (quoting *Evans*, 80 F.3d at 961). Nevertheless, in some cases, courts have held that summary judgment was premature even when the opposing party failed to file a Rule 56(d) affidavit. *See, e.g.*, *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000); *Farmer v. Brennan*, 81 F.3d 1444, 1449-50 (7th Cir. 1996); *Dean v. Barber*, 951 F.2d 1210, 1214 n. 3 (11th Cir. 1992); *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988). "'The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56([d]) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition.'" *Harrods*, 302 F.3d at 244 (quoting *First Chi.*, 836 F.2d at 1380). "When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues . . . are involved, courts have not always insisted on a Rule 56([d]) affidavit if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *Id.*; *see First Chi.*, 836 F.2d at 1380-81; *Hellstrom*, 201 F.3d at 97-98; *Farmer*, 81 F.3d at 1449-50; *Dean*, 951 F.2d at 1214 n. 3. "Specifically, if the nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit,' and if the nonmoving

party was not lax in pursuing discovery," the failure to file a Rule 56(d) affidavit may be excused. *Harrods*, 302 F.3d at 244-45 (quoting *First Chi.*, 836 F.2d at 1380). Excusal is more appropriate if the non-moving party "provide[s] reasonable 'notification and explanation' for why more time for discovery was necessary or what the parties intended to discover that was not yet in the record." *Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015) (quoting *Evans*, 80 F.3d at 961).

The court concludes that, although Defendant failed to file a Rule 56(d) affidavit, its objections raised in its memorandum of law opposing summary judgment and at the summary judgment hearing serve as the functional equivalent of such an affidavit. The court further concludes that Defendant's failure to file a Rule 56(d) affidavit should be excused. As a general rule, courts require a party in Defendant's position to state what further evidence it believes it will obtain in discovery and will reject an objection grounded on mere conclusory assertions that discovery would bring unspecified facts to light. *See id.* In the context of a patent infringement case in its early stages, however, that requirement is less stringent because, as explained above, prior to claim construction, parties likely do not know what evidence will be relevant, let alone what relevant evidence they hope to obtain in further discovery. When asked what it hopes to obtain in further discovery, Defendant, through counsel, stated that it hopes to obtain a clearer picture of which accused devices are claimed to embody which limitations and that, until this picture becomes clearer, it does not have the evidentiary tools to defend itself. This notification and explanation for why more discovery is needed accords with the court's view that summary judgment is premature for the reasons described above. Accordingly, the court concludes that Defendant properly raised the prematurity issue.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (ECF No. 80)

is hereby **DENIED**.

**IT IS SO ORDERED**.

United States District Court Judge

October 12, 2016
Columbia, South Carolina